UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RESCUECOM CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| GOOGLE, INC. | ) ) ) |
| Defendant. | ) ) ) |

5:04-CV-1055 (NAM)(GHL)

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT GOOGLE INC.'S MOTION TO DISMISS</u>**

Shawn Patrick Regan, Esq.
HUNTON & WILLIAMS LLP
N.D.N.Y. Bar No. 510638
200 Park Avenue
New York, NY 10166-0136
Telephone: (212) 309-1000

*Attorneys for Google, Inc.*

Table of Contents

|  |  | Page |
| --- | --- | --- |
| Table of Authorities | | ii |
| I. INTRODUCTION | | 1 |
| II. FACTUAL BACKGROUND | | 3 |
| III. ARGUMENT | | 4 |
| | A. Rescuecom's Trademark Infringement Claim Fails Because Neither Google Nor Its Advertisers Use Rescuecom's Mark to Identify the Source of Their Products | 5 |
| | B. Rescuecom's Second Count Fails Because Its Allegations Do Not Support a Claim for False Designation of Origin | 10 |
| | C. Rescuecom's Counts Alleging Federal Dilution, Common Law Trademark Infringement, and State Law Dilution All Fail Based on the Lack of Trademark Use | 11 |
| | D. Rescuecom's Final Count, Alleging Tortious Interference, Fails for Failure to Allege a Specific Lost Business Relationship, and For Failure to Allege a Wrongful Act | 11 |
| IV. CONCLUSION | | 12 |

Table of Authorities

Cases                                                                                                    Page

*1-800 Contacts, Inc. v. WhenU.com, Inc.,* 309 F. Supp. 2d 467 (S.D.N.Y. 2003) ................................................................................................................8

*Academy of Motion Picture Arts and Sciences v. Network Solutions, Inc.*, 989 F. Supp. 1276 (C.D. Cal. 1997) ...................................................................9

*Brookfield Comms., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) ......................................................................7

*Citibank, N.A. v. K-H Corp.,* 968 F.2d 1489 (2d Cir. 1992).......................................4

*DaimlerChrysler AG v. Bloom*, 315 F.3d 932 (8th Cir. 2003)..............................6, n.5

*Freedom Holdings, Inc. v. Spitzer,* 363 F.3d 149 (2d Cir. 2004) .........................4, n.1

*GEICO v. Google Inc.,* 330 F. Supp. 2d 700 (E.D. Va. 2004)..............................9, n.4

*Holiday Inns, Inc. v. 800 Reservations, Inc.*, 86 F.3d 619 (6th Cir. 1996) ..................7

*In re: American Express Co. Shareholder Litig.,* 39 F.3d 395 (2d Cir. 1994) .........10

*Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687 (6th Cir. 2003).............................................................................5, 6, 9, 10, 11

*Lockheed Martin Corp. v. Network Solutions,* 141 F. Supp. 2d 648 (N.D. Tex. 2001) ...............................................................................................9

*Lockheed Martin Corp. v. Network Solutions,* 985 F. Supp. 949 (C.D. Cal. 1997) ......................................................................................................9

*PACCAR, Inc. v. TeleScan Tech. LLC*, 319 F.3d 243 (6th Cir. 2003).........................6

*Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*, 1997 WL 811770 (N.D. Cal. Dec. 18, 1997) ...............................................................................7

*Pirone v. MacMillan, Inc.,* 894 F.2d 579 (2d Cir. 1990).......................................5, 11

*Prestonettes, Inc. v. Coty,* 264 U.S. 359 (1924)............................................................5

*Purgess v. Sharrock,* 33 F.3d 134 (2d Cir. 1994) .......................................................11

*Riddell Sports v. Brooks,* 872 F. Supp. 73 (S.D.N.Y. 1995).......................................11

*U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723 (E.D. Va. 2003) ................................................................................................7, 9, 10

*Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734 (E.D. Mich. 2003) ......................................................................................................8

Other Authorities

Graeme Dinwoodie et al., TRADEMARKS AND UNFAIR COMPETITION: LAW AND POLICY 460 (2004)........................................................................7

Defendant Google Inc., by and through its undersigned counsel Hunton & Williams LLP, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss.

## I.    INTRODUCTION

This case is a prime example of the errors that sometimes occur when a party attempts to apply straightforward and established principles of law to new technologies—in this case, applying established trademark law to Internet search engines. For some reason, rules and propositions that are easily understood in more traditional contexts often become hopelessly muddled when applied to the Internet.

Imagine, for example, that Ford wants to target its advertising at Toyota customers. Ford goes to magazines such as *Car and Driver*, and pays to have a full-page Ford ad face every Toyota review the magazine prints that year. Ford is aware that many of the readers of those ads go to those pages looking for information about Toyotas. After all, that is precisely the point: Ford <u>wants</u> to target its ads at its competitor's customers and prospective customers, and win those customers as its own. In so doing, Ford has "used" its competitor's trademark, "Toyota," in the sense that it is the criterion determining where the Ford ads will appear. But—so long as the Ford ads themselves do not deceive the reader into thinking that Ford's cars are made or sponsored by Toyota—there is no trademark violation in deliberately targeting one's advertisements at customers who are buying, or considering buying, or merely seeking information about, a competitor's product. That isn't trademark infringement, it's competition.

Similarly, no one would suggest that the owner of a new pizza restaurant runs afoul of trademark law by handing flyers to customers on their way into the neighboring Domino's. Neither is there anything wrong with buying billboard space as close to one's competitor's store as one can, displaying generic painkillers next to brand name painkillers, or in mailing advertisements to one's competitor's customers if one can lawfully obtain a list of them. In each

instance, one is "using" one's competitor's trademark in the sense that the trademark is used as the selection mechanism or "trigger" for one's own ads. But as courts have explained, this is not "use" for purposes of trademark analysis.

Still when the same, entirely legitimate competitive activity moves to the Internet, some people mistakenly think the rules are (or should be) different. Faced with advertising legitimately targeted at search engine users who search using the term "Rescuecom," Plaintiff Rescuecom Corporation ("Rescuecom") accuses Defendant Google Inc. of violating trademark laws, even though neither Google nor its advertisers use Rescuecom's trademark to brand their products, or in the actual complained-of advertisements. Rescuecom alleges only that Google permits advertisers to intentionally display ads in response to user queries containing the term "Rescuecom"; it does not allege that Google or any of its advertisers use Rescuecom's trademark to identify the source of their products. Permitting advertisers to display ads alongside search results so that consumers are presented with distinct choices does not violate trademark laws. Quite to the contrary, this practice epitomizes fair play and robust free-market competition. Rescuecom fundamentally miscomprehends the purpose of trademark law and, in so doing, fails to state a claim upon which relief can be granted.

When a user enters the search term "Rescuecom," Google displays a results page that shows search results along the left side. These search results are non-commercial and are objectively determined using Google's proprietary algorithms, including its PageRank technology. For the query "Rescuecom," these algorithms happen to yield Rescuecom's own website as the first search result. In addition, Google makes space available on the right side of the page (next to the search results) and, sometimes, above the search results for advertisers to place their ads. To target potential customers, Google's advertisers can display their ads when

search engine users enter selected search terms, including trademarks. Therefore, if any advertisers have chosen "Rescuecom" as a trigger, Google also displays their advertisements on the right side of the result page, alongside the search results. These ads do not mimic or incorporate Rescuecom's trademark—they simply link to the advertisers' own websites and offer the searcher options in addition to the search results.

Stripped of its high-tech trappings, Rescuecom alleges only that Google permits its advertisers to compete head-to-head with Rescuecom, by targeting their advertisements at potential Rescuecom customers. The law encourages, rather than forbids, robust competition. Because Rescuecom has not alleged that Google or its advertisers use Rescuecom's trademark as a trademark, Rescuecom has failed to state a claim and the Court should grant Google's motion to dismiss Rescuecom's complaint.

## II. FACTUAL BACKGROUND[1]

Google's popular search engine helps users find what they are looking for on the Internet. Complaint ¶¶ 12, 13. Users enter a query into Google's search engine and Google produces a web search results page listing web pages related to the search term. *Id.* ¶ 12. To generate revenue, Google also sells advertising space, in which advertisers can place text ads that link to their own websites. *Id.* ¶ 22. Under the Google "AdWords" program, advertisers can have their ads displayed when Google users enter designated search terms. *Id.*[2] Clearly titled "Sponsored Links," these ads appear in a separate section alongside the search results. *Id.* ¶¶ 22.

---

[1] Because Google moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), this account treats the well-plead factual allegations contained in Rescuecom's complaint as true. *Freedom Holdings, Inc. v. Spitzer,* 363 F.3d 149, 151-52 (2d Cir. 2004).

[2] Thus, for example, a pharmacy could choose to target its ads at anyone searching for information about "pain relievers" or "Aspirin," and a computer retailer could target its ads at searchers for "disk drives" or "Macintosh."

Thus, when a user enters the term "Rescuecom," Google provides search results that link to web pages deemed by its algorithms to be relevant to the query term "Rescuecom." The search results might include web pages sponsored by Rescuecom, critical of Rescuecom's business, or indeed web pages that simply contain the word "Rescuecom" somewhere in their text, such as news reports or even web pages belonging to Rescuecom's competitors that make reference to Rescuecom. In the margin alongside these search results (and occasionally above the search results), Google may display "Sponsored Links," paid for by companies such as Rescuecom and its competitors that want their ads displayed near search results for "Rescuecom." *Id.* ¶¶ 25-26.

Rescuecom does not allege that any of these advertisements mimic or incorporate Rescuecom's trademark. Nor does Rescuecom allege that Google or its advertisers use the Rescuecom mark to brand or otherwise identify the source of their products. Indeed, Rescuecom does not even allege that the word "Rescuecom" appears anywhere in the advertisements.

### III.     ARGUMENT

Google's motion to dismiss for failure to state a claim must be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief." *Citibank, N.A. v. K-H Corp.,* 968 F.2d 1489, 1494 (2d Cir. 1992). In considering Google's motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and must draw all inferences in favor of the plaintiff. *Freedom Holdings, Inc. v. Spitzer,* 363 F.3d 149, 151-52 (2d Cir. 2004). The Court should dismiss Rescuecom's complaint because, even when viewed most favorably to Rescuecom, it demonstrates that Rescuecom can prove no set of facts that show that Google or its advertisers use Rescuecom's trademark to identify the source of their products.

### A. Rescuecom's Trademark Infringement Claim Fails Because Neither Google Nor Its Advertisers Use Rescuecom's Mark to Identify the Source of Their Products

Rescuecom's first count alleges that Google's use of the term Rescuecom to trigger third-party advertisements constitutes trademark infringement. This requires that Rescuecom prove that Google makes a "trademark use" of Rescuecom's trademark. *See Pirone v. MacMillan, Inc.,* 894 F.2d 579, 583 (2d Cir. 1990) (trademark infringement requires proof that the defendant's use of the plaintiff's mark was "a 'trademark use,' that is, one indicating source or origin").

But not all "uses" of a trademark are actionable. Trademarks "identify and distinguish . . . goods . . . from those manufactured or sold by others and . . . indicate the source of the goods." 15 U.S.C. § 1127. "[A] trademark is not property in the ordinary sense, but only a word or symbol indicating the origin or source of a product." *Pirone,* 894 F.2d at 581 (quotation marks and citation omitted). As a result, courts have long recognized that "[a] trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) (Holmes, J.). Simply put, a defendant "can infringe [a trademark owner's] rights only if [the defendant's] use was a 'trademark use,' that is, one indicating source or origin." *Pirone,* 894 F.2d at 583; *see also Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003) ("If defendants are only using [plaintiff's] trademark in a 'non-trademark' way—that is, in a way that does not identify the source of a product—then trademark infringement and false designation of origin laws do not apply.").

Here, notably, Rescuecom does not even allege that there is any visible use of its mark *at all*. Rather, it alleges that Google allows Rescuecom's competitors to select its mark as a keyword that will trigger the display of an advertisement. The crux of Rescuecom's complaint is that consumers may see an ad—an ad that does not include the term "Rescuecom"—when they

enter queries at Google.com using, in whole or in part, the term "Rescuecom." The consumer has no way of knowing why the ad appeared—whether the ad was deemed relevant because the advertiser selected the keyword "Rescuecom," whether the advertiser selected a different keyword (for example, "data recovery") that Google deemed to be related to the consumer's query, or for some other reason altogether. Rescuecom, however, is concerned that the consumer might leap to the conclusion that the ad is being shown because the advertiser is Rescuecom, or someone affiliated with Rescuecom.

Trademark infringement, however, cannot be founded on this sort of assumption by a consumer. "[T]he mark holder is generally not entitled to relief unless the defendant advertises or otherwise promotes [the actual mark] thereby causing the public to see the protected mark and associate the infringer's goods or services with those of the mark holder." *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 939 (8th Cir. 2003). Here, neither Google nor the advertiser advertises or promotes the mark—indeed, in the complained-of situation, where a consumer has entered a query that includes the term "Rescuecom," it is the *consumer,* not Google or the advertiser, who has caused the term "Rescuecom" to appear on the screen.

Moreover, courts have refused to impose liability even for *visible* uses of a mark where that use lacks a source-signifying function. In *Interactive Products*, the court considered the defendant's "use" of the phrase "laptraveler" (a variant of the plaintiff's mark "Lap Traveler") in the "post-domain path" of a URL violated the Lanham Act. 326 F.3d at 696.[3] The court recognized that the domain name itself will usually signify source. *Id.* (citing *PACCAR, Inc. v.*

---

[3] A URL typically begins with a "domain name," like www.google.com. Anything following the domain name can be referred to as the "post-domain path." So, for example, in the URL http://www.google.com/tm_complaint.html, "tm_complaint.html" is in the post-domain path of the URL.

*TeleScan Tech. LLC*, 319 F.3d 243 (6th Cir. 2003) and *Brookfield Comms., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999)). The post-domain path, however, is different. "The post-domain path merely shows how the website's data is organized within the host computer's files." *Id.* at 696-97 (citing *Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*, 1997 WL 811770, at *4 n.6 (N.D. Cal. Dec. 18, 1997)).

Relying on the lack of a source-signifying function for the post-domain path, the Sixth Circuit observed that "it is unlikely that the presence of another's trademark in a post-domain path of a URL would ever violate trademark law." *Id.* at 698. The court therefore affirmed the trial court's judgment of non-infringement, holding that "it was unnecessary for the district court to examine the eight factors traditionally used to determine likelihood of confusion between two source-signifying marks." *Id.; cf. Holiday Inns, Inc. v. 800 Reservations, Inc.*, 86 F.3d 619, 626 (6th Cir. 1996) ("the defendant's use of a protected mark or their use of a misleading representation is a *prerequisite* to the finding of a Lanham Act violation. Absent such a finding, the eight factor test [of confusion] is irrelevant") (emphasis in original); Graeme Dinwoodie et al., TRADEMARKS AND UNFAIR COMPETITION: LAW AND POLICY 460 (2004) ("although the 'likelihood of confusion' standard is the heart of the infringement inquiry, there is necessarily a prerequisite that the defendant's activities constitute 'use.'").

Indeed, another federal district court last year decided a case with facts analogous to those presented here and, not surprisingly, it held that when a defendant invisibly uses trademarks encountered on the Internet to trigger advertisements, but does not actually "mark" the advertisement with the trademark, the defendant does not use the trademark in a way that runs afoul of trademark laws. *See U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723 (E.D. Va. 2003). In *U-Haul*, the defendant WhenU's computer software SaveNow monitored

software licensees' Internet use, searching for designated terms, including trademarks. *Id.* at 725-26. When the licensees encountered the trademark U-Haul, the SaveNow software triggered and displayed "pop-up advertisements" that obscured the other windows on the licensees' computer screens. *Id.* at 726-27. The court held that this practice "does not constitute 'use' under the Lanham Act," because "U-Haul fails to adduce any evidence that WhenU uses U-Haul's trademarks to identify the source of its goods or services." *Id.* at 728; *see also Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 757-58 (E.D. Mich. 2003) (also holding that selling pop-up advertisements triggered by trademarked keywords is not actionable under the Lanham Act); *but see 1-800 Contacts, Inc. v. WhenU.com, Inc.,* 309 F. Supp. 2d 467, 490 n.43 (S.D.N.Y. 2003) (declining to follow, without discussion, *Wells Fargo* and *U-Haul*), *appeal under submission,* No. 04-0026-cv (2d Cir. April 5, 2004).[4]

Similarly, courts have rejected trademark claims against Internet domain name registrars such as Network Solutions for selling trademarks as domain names to cybersquatters, even where the cybersquatters are making an infringing use of the mark. These courts reason that Network

---

[4] Another district court has recently denied a motion to dismiss filed by Google in a case that concerned, among other things, keyword-triggered advertisements. *See GEICO v. Google Inc.,* 330 F. Supp. 2d 700 (E.D. Va. 2004).

There are two notable differences between the *GEICO* case and the case at bar. First, in *GEICO* the court denied the motion to dismiss in part because "when defendants sell the rights to link advertising to plaintiff's trademarks, defendants are using the trademarks in commerce in a way that may imply that defendants have permission from the trademark holder to do so." *Id.* at 704. That is, the court concluded that Google might be confusing *advertisers.* Rescuecom, in contrast, alleges only that *consumers*—not advertisers—may be confused. *See* Complaint ¶¶ 32-33.

Second, in *GEICO* the plaintiff alleged use of its marks not only in keywords, but also in the text of the advertisements themselves. *See* 330 F. Supp. 2d at 704 (relying on allegation that "advertisers themselves. . . incorporate[d the GEICO marks] . . . into the advertisements"). Rescuecom, however, does not allege its mark is being used in the text of advertisements, but only as a keyword to trigger advertisements. *See* Complaint ¶¶ 25-26. As the *GEICO* court described, this as "a critical distinction." 330 F. Supp. 2d at 704

Solutions cannot be held liable because it is not using the protected term to identify Network Solutions' services or products.[5] *See Academy of Motion Picture Arts and Sciences v. Network Solutions, Inc.*, 989 F. Supp. 1276, 1279-80 (C.D. Cal. 1997) ("There has been no allegation that Network Solutions markets its registration service or the quality of its service by displaying or otherwise exploiting the Academy's marks"); *Lockheed Martin Corp. v. Network Solutions,* 985 F. Supp. 949, 967-68 (C.D. Cal. 1997), *aff'd on other grounds,* 194 F.3d 980, 983-85 (9th Cir. 1999); *Lockheed Martin Corp. v. Network Solutions,* 141 F. Supp. 2d 648, 654-55 (N.D. Tex. 2001).

Like WhenU and Network Solutions, Google does not use Rescuecom's mark to identify the source of either its search engine or its advertising products. Instead, Google uses its stylized "GOOGLE" mark to identify the source of those products. Google relies on the Rescuecom mark only as a trigger for displaying advertisements and nowhere in its complaint does Rescuecom accuse Google of using the Rescuecom mark "to identify the source of its" search engine or advertising products. *U-Haul*, 279 F. Supp. 2d at 728. Google therefore uses the Rescuecom mark in a "'non-trademark' way" and "trademark infringement and false designation of origin laws do not apply." *Interactive Prods.*, 326 F.3d at 695.

Moreover, to the extent that Rescuecom is relying on principles of contributory infringement, its trademark infringement claim still fails. Nowhere in its complaint does Rescuecom allege that Google's advertisers incorporate or refer to Rescuecom's trademark in their ads. Because Google's advertisers do not use Rescuecom's trademark to identify the source of their products, but only as a trigger for the display of their advertisements, those advertisers do

---

[5] *See also DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 939 (8th Cir. 2003) (holding that a telecommunications company did not use the term "Mercedes" in a trademark case merely by licensing a vanity phone number that spelled 1-800-MERCEDES to Mercedes dealers).

not infringe Rescuecom's trademark.  *See U-Haul*, 279 F. Supp. 2d at 728; *Interactive Prods.*, 326 F.3d at 695.

Because Rescuecom alleges no trademark "use" of its mark in any advertisements, no set of facts contained in Rescuecom's complaint can support its claims against Google for trademark infringement.

### B. Rescuecom's Second Count Fails Because Its Allegations Do Not Support a Claim for False Designation of Origin

Rescuecom's second count, alleging false designation of origin, fares no better than its infringement count.  Rescuecom asserts, in conclusory fashion, that "Internet Users who search using the term 'Rescuecom' on defendant Google's Internet Search Engine have a reasonable expectation that the websites and hyperlinks appearing on defendant Google's Search Result Page are related to plaintiff Rescuecom Corporation." Complaint ¶ 58.  Conclusory assertions in a complaint, however, need not be accepted absent well-plead factual support.  *See In re American Express Co. Shareholder Litig.,* 39 F.3d 395, 400-01 n.3 (2d Cir. 1994) ("Conclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss.").  Here, the factual allegations in the complaint at best support the conclusion that consumers might legitimately conclude the links on a Search Result Page are related to *their query,* rather than specifically to Rescuecom Corporation.

Beyond that, as noted above, the consumers have no basis for concluding *why* the links might be related to Rescuecom.  Indeed, Rescuecom does not even assert that consumers are *likely* to be deceived, as required by the Lanham Act, *see* 15 U.S.C. § 1125(a)(1)(A), but only speculate that consumers "may" be deceived.  Complaint ¶ 59.  Simply put, that is not enough to support a claim for false designation of origin.

In any event, the lack of any allegation of *trademark* use of Rescuecom's mark dooms its false designation of origin claim just as it does its infringement claim. *See Interactive Prods.,* 326 F.3d at 695 (without "trademark use," "false designation of origin laws do not apply").

### C. Rescuecom's Counts Alleging Federal Dilution, Common Law Trademark Infringement, and State Law Dilution All Fail Based on the Lack of Trademark Use

Rescuecom's third, fourth, and fifth counts allege Lanham Act dilution, common law trademark infringement, and state law dilution, respectively. Each of these claims requires proof of a source-signifying use of Rescuecom's mark. *See Pirone v. MacMillan, Inc.,* 894 F.2d at 581-82, 583 (dismissing common law infringement claim in addition to Lanham Act infringement claim based on lack of "trademark use"); 15 U.S.C. § 1125(c)(1) (dilution claim requires "use" of the mark by the defendant); N.Y.S. Gen. Bus. Law § 360-l (injunctive relief requires proof of infringement). For the same reason that Rescuecom's first count fails based on a lack of trademark use of its mark, so too must its third, fourth, and fifth counts fail.

### D. Rescuecom's Final Count, Alleging Tortious Interference, Fails for Failure to Allege a Specific Lost Business Relationship, and For Failure to Allege a Wrongful Act

To prevail on its final count, for tortious interferences with prospective economic advantage, Rescuecom must show "(1) business relations with a third party; (2) defendants' interference with those business relations; (3) defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the relationship." *Purgess v. Sharrock,* 33 F.3d 134, 141 (2d Cir. 1994).

Rescuecom alleges, on information and belief, that it "would have realized additional sales, franchisees, customers and revenues" from unidentified consumers but for the complained-of conduct. Complaint ¶ 89. Such nebulous allegations do not satisfy the first element of a tortious interference claim. *See Riddell Sports v. Brooks,* 872 F. Supp. 73, 78-79 (S.D.N.Y.

1995) (dismissing claim for failure "to allege facts sufficient for the Court to infer that counterplaintiffs would have consummated contractual relationships if not for counterdefendants' conduct.  Counterplaintiffs' allegations are too vague to support a finding that they would have executed specific contracts but for interference by counterdefendants.").

Moreover, Rescuecom's tortious interference claim presupposes that the selection by Google's advertisers of Rescuecom's mark as a keyword trigger for ads is a wrongful act.  For the reasons explained above, regarding Rescuecom's first five counts, that is not so.  Rescuecom has thus also failed adequately to allege the third element of a tortious interference claim.

### IV.   CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss Rescuecom's complaint with prejudice.

Dated: New York, New York
November 8, 2004

HUNTON & WILLIAMS LLP

By: /s/ Shawn Patrick Regan
Shawn Patrick Regan, Esq.
N.D.N.Y. Bar No.  510638
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, NY 10166-0136
Telephone:  (212) 309-1000

*Attorneys for Google Inc.*

## **DECLARATION OF SERVICE**

Raymond E. Galbraith, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

I am a Litigation Paralegal at the firm of Hunton & Williams LLP, attorneys for Defendant Google, Inc.

That on November 8, 2004, I served a true copy of the foregoing on counsel for Plaintiff, via electronic service, at the address listed below

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 8, 2004.

/s/ Raymond E. Galbraith
Raymond E. Galbraith

TO:  Edmund J. Gegan, Esq.
    Rescuecom
    2560 Burnet Avenue
    Syracuse, New York  13206
    (315) 432-8800
    Email: ed@rescuecom.com

*Counsel for Plaintiff Rescuecom Corporation*

64557.000001 NEW_YORK 193618v1