**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RESCUECOM CORPORATION,**

                **Plaintiff,**

v.                                     5:04-CV-1055
                                       (NAM/GHL)

**GOOGLE, INC.,**

                **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

Rescuecom Corporation                  Edmund J. Gegan, Esq.
2560 Burnet Avenue
Syracuse, New York 13206

Hunton & Williams LLP                  Shawn Patrick Regan, Esq.
200 Park Avenue
New York, New York 10166-0136

Hon. Norman A. Mordue, Chief Judge:

## MEMORANDUM-DECISION AND ORDER

**I.  INTRODUCTION**

Defendant Google, Inc., moves to dismiss plaintiff Rescuecom Corporation's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. Defendant contends that selling "Rescuecom", plaintiff's trademark, to plaintiff's competitors as a keyword that triggers the appearance of links to their websites among the search results an Internet user receives when he or she enters "Rescuecom" in Google,

defendant's Internet search engine,[1] is not a trademark "use" within the meaning of the Lanham Act, 15 U.S.C. § 1051 *et seq*.  Thus, defendant argues, plaintiff can prove no set of facts entitling it to relief on its trademark infringement claim (Count I), false designation of origin claim (Count II), federal dilution claim (Count III), common law trademark infringement claim (Count IV), or state law dilution claim (Count V), all of which require proof of trademark use.  Defendant also seeks dismissal of plaintiff's tortious interference claim (Count VI) for failure to state a claim.  Plaintiff opposes defendant's motion.

## II.     The Complaint

The Court accepts as true the following facts from the complaint:  Plaintiff is a computer services franchising business.  Its 67 franchises offer repair, consulting, networking, and Internet services.  Plaintiff offers its franchisees the use of its trademarks and business system, which includes a 24/7/365 telephone answering service, a dispatch service, and customer service.

In 1998, plaintiff filed and registered "Rescuecom" as its trademark with the United States Patent and Trademark Office.  Through great expense and care, plaintiff has become well known and famous in its market and has gained a reputation for excellence and outstanding service to customers and franchisees.  As a result, its trademark is a valuable business asset.

Plaintiff's main website's domain name is Rescuecom.com.  Plaintiff conducts a substantial amount of its business over the Internet, and receives an average of 17,000 to 30,000 visitors to its websites each month.  Plaintiff advertises over the Internet, and through Google.

---

[1] The Second Circuit defines "search engine" operationally:

> A search engine will find all web pages on the Internet with a particular word or phrase. Given the current state of search engine technology, that search will often produce a list of hundreds of web sites through which the user must sort in order to find what he or she is looking for.

*Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 493 (2d Cir. 2000).

Because plaintiff's services are computer related its potential franchisees and customers use the Internet to do business and search for goods and services. Plaintiff's famous name and trademark, as well as its reputation for excellence, distinguish its goods and services from its competition and lead potential franchisees and customers to search for Rescuecom Corporation specifically through a variety of means, including Google.

There are two primary ways an Internet user can find a particular company's website. An Internet user may either guess that the company uses its name or trademark as its domain name, and enter that domain name into an Internet browser, or enter the company's name or trademark into an Internet search engine such as Google.

Google is located at the domain name Google.com. Defendant claims Google is the most popular search engine on the Internet and that it maintains proprietary, patented, software which lists websites in order of relevance to the Internet user's search terms. The search results are often voluminous and list thousands of websites.

From an Internet user's search terms, defendant can ascertain the subject, company, goods, or services in which the Internet user is interested. According to the complaint, "[t]his allows Google to obtain a significant percentage of its profit from the sale of 'contextual advertising' space, that is advertising space which allows companies to place their advertising in front of consumers who have already identified themselves as interested in products or services similar to theirs." One of the programs defendant offers is "AdWords". Using AdWords, an advertiser can bid on terms (keywords) an Internet user might enter as a search term on Google. Defendant then links the advertisement and hyperlink (sponsored link) to the keyword the advertiser purchased. When an Internet user enters the keyword, it triggers the sponsored link to

3

appear on the search results page either to the right or immediately above the search results. Another program defendant offers is "Keyword Suggestion Tool", which it uses to recommend keywords to advertisers.

Defendant does not always identify sponsored links as advertisements and it designs those appearing at the top of the search results to look like part of the "non-sponsored" search results. As a result, Internet users may infer, based on a sponsored link's appearance at the top of the list of search results, that a sponsored link is the most relevant website among the search results. An Internet user can "click" on the sponsored link with a mouse to go to the advertiser's website. Advertisers pay defendant based on the number of clicks the sponsored link receives.

Rescuecom is an often searched term on the Internet. Plaintiff submits thousands of keywords to defendant, including Rescuecom, alone and in combination with other words. Consequently, when an Internet user enters Rescuecom into Google as a search term, one of plaintiff's sponsored links appears above or to the right of the search results.

Many of plaintiff's competitors advertise their services on the Internet and have submitted plaintiff's trademark to defendant's AdWords program as a keyword. Defendant is aware that plaintiff is in the business of computer services franchising and computer service, repair, maintenance, and consulting. Defendant, through its "Keyword Suggestion Tool", has recommended Rescuecom to plaintiff's competitors as a keyword in order to make plaintiff's competitors' advertising more successful and to generate more profits for defendant by intercepting and diverting plaintiff's customers and potential customers.

**III.   DISCUSSION**

    **A.   Standard – Rule 12(b)(6)**

4

When considering a motion to dismiss a complaint under Rule 12(b)(6), a court "'must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.'" *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  A court may not dismiss an action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley*, 355 U.S. at 45-46.  "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  **B.     Trademark Infringement – 15 U.S.C. § 1114(1)**

Defendant seeks dismissal of plaintiff's trademark infringement claim (Count I) and false designation of origin claim (Count II) on the basis that the complaint fails to allege that defendant's use of plaintiff's mark, Rescuecom, is an actionable "trademark use".  To prevail on a trademark infringement claim under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)[2] or a false designation of origin claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1),[3] "a plaintiff

---

[2] 15 U.S.C. § 1114 provides, in relevant part,

(1) Any person who shall, without the consent of the registrant-

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

[3] 15 U.S.C. § 1125 provides, in relevant part,

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination

5

must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods or services,' 15 U.S.C. § 1114(1)(a), (5), without the plaintiff's consent." *1-800 Contacts v. WhenU.com, Inc.*, 414 F.3d 400, 406-407 (2d Cir. 2005).  The plaintiff must also show that the defendant's use of that mark "is likely to cause confusion . . . as to the affiliation, connection, or association of [the defendant] with [the plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [the plaintiff]." 15 U.S.C. § 1125(a)(1)(A).

Although the Second Circuit has not considered whether the purchase or sale of a trademark as a keyword that triggers the appearance of an advertisement is a trademark infringement, *see 1-800 Contacts,* 414 F.3d at 411-12 (distinguishing the defendant's internal use of a trademark to trigger a "pop-up" advertisement to appear from "internet advertising companies," that "'sell' keyword trademarks to . . . customers or otherwise manipulate which category-related advertisement will pop up in response to any particular terms on the internal directory."), several district courts have reached different conclusions on this issue. *Compare GEICO v. Google, Inc.*, 330 F.Supp.2d 700 (E.D.Va. 2004) (denying the defendant Internet

---

       thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

       (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

       (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

       shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

search engines' motion to dismiss finding that the plaintiff adequately alleged that the defendants' use of plaintiff's trademark, GEICO, as a keyword to advertisers was a "use in commerce" and likely to cause confusion), *claim dism'd, Order*, Dec. 15, 2004 (dismissing Lanham Act claim following bench trial on finding no likelihood of confusion), *Edina Realty, Inc. v. The MLSOnline.com*, Civ. 04-4371, 2006 WL 737064 (D.Minn. Mar. 20, 2006) (denying the defendant's motion for summary judgment finding that the defendant's purchase of the plaintiff's trademark as a keyword to prompt the appearance of defendant's sponsored link advertisements was a "use in commerce"), *Edina Realty, Inc. v. The MLSOnline.com*, Civ. 04-4371, 2006 WL 1314303 (D.Minn. May 11, 2006) (*Edina II*) (denying motion for reconsideration), *Rescuecom Corp. v. Computer Troubleshooters USA, Inc.*, 1:04-CV-03499 (N.D.Ga. Sept. 16, 2005) (declining to dismiss the complaint which alleged that the defendant's purchase of the plaintiff's trademark from an Internet search engine as a keyword that would generate the appearance of the defendant's sponsored link was a "use in commerce" concluding that in view of the novel legal question presented, and the unsettled state of the law, resolution should await a factually developed record), *Google v. American Blind & Wallpaper Factory, Inc.*, C 03-05340, 2005 WL 832398 (N.D.Cal. Mar. 30, 2005) (denying Google's motion to dismiss in view of the unsettled state of the law and in order to await factual development of the record), and *800-JR Cigar, Inc., v. Goto.com, Inc*., Civil Action No. 00-3179, 2006 WL 1971659, *8 (D.N.J. July 13, 2006) (denying summary judgment finding a question of fact as to whether the defendant "pay-for-priority" Internet search engine used the plaintiff's trademark within the meaning of the Lanham Act because there was evidence that the defendant accepted bids on the plaintiff's trademark from the plaintiff's competitors, ranked paid advertisers before "natural" listings among the search

7

results, and suggests the plaintiff's trademarks to the plaintiff's competitors), *with Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F.Supp.2d 402, 415 (S.D.N.Y. 2006) (*Merck I*) (granting the defendants' motion to dismiss claims regarding the defendants' purchase of the plaintiff's trademark "ZOCOR" as a keyword from Internet search engines, holding that the defendants' purchase of the trademark was an "internal use" and did not constitute a "trademark use" because the defendants did not place the plaintiff's marks "on any goods or containers or displays or associated documents, or use them in any way to indicate source or sponsorship"), *and Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, NO. 05 CIV 3650, 2006 WL 1418616 (S.D.N.Y. May 24, 2006) (*Merck II*) (denying motion for reconsideration).  Plaintiff urges the Court to apply the reasoning set forth in *GEICO* and *Edina Realty* and deny defendant's motion to dismiss.

In *GEICO*, the court denied the defendant search engines' motion to dismiss finding that the plaintiff adequately alleged trademark use by asserting that when the "defendants sell the rights to link advertising to plaintiff's trademarks, defendants are using the trademarks in commerce in a way that may imply that defendants have permission from the trademark holder to do so."  330 F.Supp.2d at 704.[4]  In *Edina Realty*, the defendant real estate brokerage firm (and the plaintiff real estate brokerage firm's direct competition), purchased "Edina Realty", the plaintiff's trademark, as a keyword from Internet search engines and used it in hidden links and hidden text on its website.  2006 WL 737064 at *1.  There, the court denied the defendant's motion for

---

[4] In *GEICO*, the plaintiff further alleged that the defendants "incorporate[ed] [the trademark] into advertisements, which are likely to deceive customers into believing that the advertisers provide accurate information about GEICO products"; and that the defendants "exercise significant control over the content of advertisements that appear on their search results pages," *id*.  Here, plaintiff has not alleged that the sponsored links display Rescuecom.

8

summary judgment finding that the defendant's purchase of the plaintiff's trademark as a keyword (to generate its ads) was a "use in commerce." *Id*. at *3.

In *1-800 Contacts* the Second Circuit found the court's rationale in *GEICO*, which "seemingly based a finding of trademark 'use' on the confusion such 'use' was likely to cause", "put the cart before the horse." 414 F.3d at 412. The court explained:

> Not only are "use," "in commerce," and "likelihood of confusion" three distinct elements of a trademark infringement claim, but "use" must be decided as a threshold matter because, while any number of activities may be "in commerce" or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the "use" of a trademark.

*Id*. (quoting 5 U.S.C. § 1114) (citing *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (PETA)). Thus, to the extent *GEICO* and *Edina Realty* base findings of trademark use on allegations of a likelihood of confusion or commercial use of a mark, they are inconsistent with the law of the Second Circuit which specifies that trademark use, in commerce, and likelihood of confusion are three separate elements. *Id*.

"A 'trademark use' . . . is one indicating source or origin". *Pirone v. MacMillan, Inc*., 894 F.2d 579, 583 (2d Cir. 1990); *see also 1-800 Contacts*, 414 F.3d at 408 (trademark use "ordinarily at issue in an infringement claim" involves placement of trademarks on "goods or services in order to pass them off as emanating from or authorized by" the trademark owner). The Lanham Act defines "use in commerce," in relevant part, as follows:

> For purposes of this chapter, a mark shall be deemed to be in use in commerce-
> (1) on goods when--
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
> (B) the goods are sold or transported in commerce, and
> (2) on services when it is used or displayed in the sale or advertising of services and

9

>the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127.

In this case, plaintiff asserts that defendant sells Rescuecom to plaintiff's competitors as a keyword that triggers the competitors' sponsored links to appear on the search results page when an Internet user enters Rescuecom as a search term. Plaintiff contends that defendant's actions constitute trademark use because: (1) defendant is attempting to "free-ride" on the good will associated with Rescuecom and its activities cause confusion; (2) defendant's activities lure Internet searchers away and prevent them from reaching plaintiff's website; (3) defendant's activities alter the search results an Internet user receives; and (4) defendant uses Rescuecom internally as a keyword that triggers the appearance of competitors' advertisements.

### 1. Good Will and Confusion

Even if plaintiff proved, as it alleges, that defendant is capitalizing on the good will of plaintiff's trademark by marketing it to plaintiff's competitors as a keyword in order to generate defendant's own advertising revenues, that plaintiff's competitors believed defendant is authorized to sell its trademark, or that Internet users viewing the competitors' sponsored links are confused as to whether the sponsored links belong to or emanate from plaintiff, none of these facts, alone or together, establish trademark use. In *1-800 Contacts*, 414 F.3d at 410, the Second Circuit found that WhenU's "alleged effort to capitalize on an [Internet] user's specific attempt to access the 1-800 website" by causing a pop-up ad to appear when an Internet user accessed 1-800's website, was alone insufficient to show trademark use because "[a]bsent improper use of [a] trademark . . . such conduct does not violate the Lanham Act." Although these facts may suffice

10

to satisfy the "in commerce" and likelihood of confusion requirements at the pleading stage, without an allegation of trademark use in the first instance, they cannot sustain a cause of action for trademark infringement. *Id*. at 412 (rejecting the plaintiff's argument that the defendant's conduct was use because it was likely to confuse Internet users "as to the source of the ad" on the grounds that use, "in commerce", and "likelihood of confusion" are distinct elements and that "use" "must be decided as a threshold matter"); *see also Merck II*, 2006 WL 1418616 at *2 ("commercial use is not the equivalent of 'use in commerce' for trademark purposes.").

### 2. Access to the Website

Plaintiff also argues that defendant's use of its mark prevents Internet users from reaching its website because an Internet user who has searched for Rescuecom cannot click on a sponsored link and access plaintiff's website simultaneously. In support of its argument, plaintiff cites several cases in which the defendants registered domain names that were similar or identical to the plaintiffs' trademarks. *See PETA*, 263 F.3d 359 (peta.org); *OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F.Supp.2d 176 (W.D.N.Y. 2000) (thebuffalonews.com); *Planned Parenthood Fed'n of Am. v. Bucci*, 97 Civ. 0629, 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997) (plannedparenthood.com). In those cases, an Internet user who typed in the plaintiff's trademark, guessing it to be the plaintiff's website address, would reach a website that bore the plaintiffs' trademark but criticized or parodied the plaintiffs. The defendants' actions, therefore, prevented the Internet user from reaching the plaintiffs' websites directly.

In this case, according to the complaint, unlike typing in a trademark as a domain name, which leads directly to a website, typing a trademark into defendant's search engine leads to a page showing sponsored links and relevant search results, including a link to plaintiff's website.

11

More importantly, there is no allegation that any of the links among the search results, except those belonging to plaintiff, display plaintiff's trademark or that defendant's activities effect the "appearance or functionality" of plaintiff's website.  In *1-800 Contacts*, the Second Circuit found the district court's holding that WhenU, "by 'causing pop-up advertisements for Defendant Vision Direct to appear when SaveNow users have specifically attempted to access [1-800]'s website, . . . [is] displaying [1-800]'s mark in the . . . advertising of . . . Vision Direct's services'" was "fatal[ly] flaw[ed]" because "WhenU's pop-up ads do not display the 1-800 trademark" and had "absolutely no tangible effect on the appearance or functionality of the 1-800 website.".  414 F.3d at 410.  Thus, plaintiff's allegation that defendant's activities prevent an Internet user from reaching plaintiff's website, even if true, would not entitle plaintiff to relief under the Lanham Act in the absence of an allegation that defendant made a trademark use of Rescuecom in the first instance.

### 3. Alteration of Search Results

In an effort to allege trademark use, plaintiff also asserts that defendant's sale of Rescuecom as a keyword to plaintiff's competitors alters the search results an Internet user receives when he or she searches for Rescuecom, diverting and misdirecting Internet users away from its website.  In *1-800 Contacts*, the Second Circuit found it significant that WhenU's activities did not "alter in any way the results a C-user will obtain when searching with the 1-800 trademark", and distinguished WhenU's activities on that basis from *Playboy Enters., Inc. v. Netscape Communications Corp*., 354 F.3d 1020, 1024 (9th Cir. 2004) (holding that infringement could be based on the defendant's insertion of unidentified banner ads on Internet user's search-results page); *Brookfield Communications v. West Coast Entm't Corp*., 174 F.3d 1036 (9th Cir.

1999) (holding that the defendant's use of trademarks in "metatags," invisible text within websites that search engines use for ranking results, constituted a "use in commerce" under the Lanham Act); and *Bihari v. Gross*, 119 F.Supp.2d 309 (S.D.N.Y. 2000) (discussing *Brookfield* and similar cases).  In distinguishing those cases, however, the Second Circuit noted that it did "not necessarily endorse their holdings." *Id.* at 411, n.15 (citing *Playboy*, 354 F.3d at 1034-36 (Berzon, C.J., concurring)).[5]  Moreover, plaintiff's allegation that defendant's activities alter search results does not show trademark use because here, unlike *Playboy Enters.*, *Brookfield Communications*, and *Bihari*, there is no allegation that plaintiff's trademark is displayed in any of the sponsored links about which plaintiff is concerned, *cf. GEICO*, 330 F.Supp.2d at 704 ("[a]ccepting as true the facts alleged by plaintiff regarding *the inclusion of the marks in advertisements* and defendants' overall control of their advertising program, we find that plaintiffs have alleged facts sufficient to support their claims that advertisers make a "trademark use" of the plaintiffs' mark) (emphasis added), or that defendant's activities prevent a link to plaintiff's website from appearing on the search results page.  Thus, according to the complaint, an Internet user who enters Rescuecom into Google as a search term, may still go to plaintiff's website(s) by clicking on the appropriate link on the search results page – even though he or she may have other choices.  In *1-800 Contacts*, the Second Circuit found that WhenU's "alleged effort to capitalize on an [Internet] user's specific attempt to access the 1-800 website" by causing a pop-up ad to appear

---

[5] Additionally, none of these cases address whether the defendant's use of the trademark at issue is, in the first place, a trademark use.  In *Playboy*, the Ninth Circuit expressly stated that "use in commerce" was undisputed.  354 F.3d at 1024 ("PEI clearly holds the marks in question and defendants used the marks in commerce"); *see also Brookfield,* 174 F.3d at 1062-66 (finding the defendant's use of trademarks in metatags caused "initial interest confusion" and therefore violated the Lanham Act).   In *Bihari*, the court held that the defendant's use of the plaintiff's trademarks in metatags on its websites was a "use in commerce" because they "effectively act[ed] as a conduit, steering potential customers away from [the plaintiff's business] and toward its competitors".  119 F.Supp.2d at 318.  Thus, plaintiff's reliance on these cases as authority for the proposition that defendant's "invisible" use of Rescuecom may constitute a trademark use, is unavailing.

13

when an Internet user accessed 1-800's website, was alone insufficient to show trademark use, positing the following analogy:

> Indeed, it is routine for vendors to seek specific "product placement" in retail stores precisely to capitalize on their competitors' name recognition. For example, a drug store typically places its own store-brand generic products next to the trademarked products they emulate in order to induce a customer who has specifically sought out the trademarked product to consider the store's less-expensive alternative. WhenU employs this same marketing strategy by informing C-users who have sought out a specific trademarked product about available coupons, discounts, or alternative products that may be of interest to them.

414 F.3d at 410-11. Thus, plaintiff has failed to allege any facts which would show that defendant's activities, even if they alter the search results, constitute a trademark use as a matter of law.

### 4. Internal Use

Defendant's internal use of plaintiff's trademark to trigger sponsored links is not a use of a trademark within the meaning of the Lanham Act, either, because there is no allegation that defendant places plaintiff's trademark on any goods, containers, displays, or advertisements, or that its internal use is visible to the public. In *1-800 Contacts*, the Second Circuit held that a:

> company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to a individual's private thoughts about a trademark. Such conduct simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods or services.

414 F.3d at 409; *see also Merck I*, 425 F.Supp.2d at 415 (This internal use of the mark "Zocor" as a key word to trigger the display of sponsored links is not use of the mark in a trademark sense.);[6]

---

[6] In granting the defendants' motion to dismiss, the court also found it significant "that defendants actually sell Zocor . . . on their websites" and held "[u]nder these circumstances, there is nothing improper with defendants' purchase of sponsored links to their websites from searches of the keyword 'Zocor.'" *Merck I*, 2006 WL 800756 at *9.

*Merck II*, 2006 WL 1418618 at *2 ("This internal use of the mark 'Zocor' as a key word to trigger the display of sponsored links is not use of the mark in a trademark sense; rather, this use is more akin to the product placement marketing strategy employed in retail stores, where, for example, a drug store places its generic products alongside similar national brand products to capitalize on the latter's name recognition."). Thus, in the absence of allegations that defendant placed plaintiff's trademark on any goods, displays, containers, or advertisements, or used plaintiff's trademark in any way that indicates source or origin, plaintiff can prove no facts in support of its claim which would demonstrate trademark use. Accordingly, defendant's motion to dismiss Counts I and II is granted.

### C.     Dilution of Trademark – 15 U.S.C. § 1125(c)

Defendant also seeks dismissal of plaintiff's federal dilution claim (Count III), which, defendant asserts, requires proof of trademark use. The federal antidilution act provides:

> The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's *commercial use in commerce* of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark . . . .

15 U.S.C. § 1125(c)(1) (emphasis added). To establish trademark dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), plaintiff must show (1) their mark is famous within the meaning of the statute; and (2) defendant's use caused actual dilution of the mark. *Savin Corp. v. Savin Group*, 391 F.3d 439, 455 (2d Cir. 2004). Here, as discussed, plaintiff can prove no set of facts showing trademark use in the first instance. *See also U-Haul Intern. Inc. v. WhenU.com, Inc.*, 279 F.Supp.2d 723, 729 (E.D.Va. 2003) (entering judgment as a matter of law for the defendant on the plaintiff's claim of trademark dilution because the plaintiff was "unable to show

15

that WhenU was using U-Haul's marks as defined in the Lanham Act."). Accordingly, defendant's motion to dismiss Count III is granted.

### D. Pendent State Law Claims – Trademark Infringement, Trademark Dilution under N.Y. Gen. Bus. Law § 360-L, and Tortious Interference with Economic Advantage

In the complaint, plaintiff alleges that the Court has supplemental jurisdiction over its pendent state law claims pursuant to 28 U.S.C. § 1367. The Court, however, has dismissed plaintiff's federal claims and because plaintiff asserts no other basis for the Court's jurisdiction, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Counts IV, V, and VI are dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion to dismiss is **granted**; and it is further

**ORDERED** that Counts I, II, and III are **dismissed with prejudice**; and it is further

**ORDERED** that Counts IV, V, and VI are **dismissed without prejudice**.

**IT IS SO ORDERED.**

Dated: September 28, 2006

Norman A. Mordue
Chief United States District Court Judge